UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SANJAY TRIPATHY,                                                    # 20-CV-6366-FPG

                Petitioner,                        DECISION AND ORDER

     v.

A. SCHNEIDER, Acting Superintendent,
Gowanda C.F., DOCCS, et al.,

               Respondents.

---

## INTRODUCTION

*Pro se* Petitioner Sanjay Tripathy, a prisoner in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), has filed an Emergency Petition Due to Corona Virus/COVID-19/SARS-CoV2 ("Petition") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Section 2254").  ECF No. 1. Petitioner primarily asserts that the ongoing COVID-19 pandemic has rendered the conditions of his confinement unconstitutional under the Eighth Amendment of the United States Constitution. Respondents have filed a Motion to Dismiss for Failure to State a Claim, arguing that Petitioner's claims are not cognizable in a federal habeas proceeding and, in any event, are unexhausted. ECF No. 6. For the reasons set forth below, the Court finds that the Petition is a "mixed petition" containing both exhausted and unexhausted claims. The Court further finds that dismissal of the Petition without prejudice, with leave to refile upon completion of exhaustion proceedings, is the appropriate course because dismissal will not jeopardize the timeliness of a subsequent Section 2254 petition. Therefore, the Court GRANTS Respondents' Motion to Dismiss in part, to the extent it seeks dismissal of the Petition based on the failure to exhaust state remedies as to the conditions of confinement claim, and denies it in all other respects. The Petition is DISMISSED WITHOUT PREJUDICE.

## BACKGROUND

Petitioner is incarcerated pursuant to a judgment entered on July 11, 2018, in New York State Supreme Court (New York County), following a jury verdict convicting him of first-degree criminal sexual act, first-degree sexual abuse, second-degree strangulation, second-degree assault, and second-degree unlawful imprisonment. Petitioner is serving an aggregate determinate sentence of seven years' imprisonment at Gowanda Correctional Facility ("Gowanda C.F."). His earliest release date is May 15, 2024, at which time he will be subject to seven years' post-release supervision.[1]

According to Petitioner, his appellate counsel perfected his direct appeal in October 2019 in the Appellate Division, First Department, New York State Supreme Court. However, Petitioner states, the District Attorney's Office has not yet filed its brief in opposition. *See* ECF No. 1 at 4-5, 16-17.

In the Petition dated May 27, 2020, Petitioner contends that he is at increased risk of contracting COVID-19 and experiencing severe illness or death due to his age (50 years-old) and the following medical conditions: high blood pressure, heart disease, allergies, "respiratory illness/asthma," high cholesterol, diabetes, and obesity. Petitioner also states that he suffered a stroke in March 2015. *Id.* at 3, 6. As a result of his complicating medical conditions, he asserts, his continued incarceration during the COVID-19 pandemic violates his Eighth Amendment right not to be subjected to cruel and unusual punishment. *Id.* at 2-3, 6-8. Petitioner seeks temporary release from prison and placement on home confinement in North Carolina during the COVID-19 pandemic. He states that once the pandemic is over, he will return to DOCCS custody to finish serving his sentence. *Id.* at 3, 10. As a second basis for the writ, Petitioner cites the "undue delay"

---

[1] Department of Corrections and Community Supervision Inmate Lookup, DIN 18-R-1673, *available at* http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ1/WINQ000 (last accessed July 8, 2020).

by the District Attorney's appeals unit in filing its opposition to Petitioner's brief on direct appeal. *Id*. at 3, 4-5, 16-17.

Respondents responded to the Petition by filing a Motion to Dismiss for Failure to State a Claim, ECF No. 6. Respondents argue that Petitioner's claim based on the conditions of confinement is properly the subject of a civil rights action under 42 U.S.C. §1983 ("Section 1983") and is not cognizable in a habeas corpus petition under Section 2254. ECF No. 6-3 at 3-5. Respondents contend that, even were Petitioner's Eighth Amendment claim cognizable in this Section 2254 proceeding, he cannot obtain federal habeas corpus relief on it because it is unexhausted. *Id*. at 5-8. Respondents argue that Petitioner's stand-alone claim based on appellate delay is unexhausted. Respondents further assert that any delay in Petitioner's appellate proceedings has not been so unreasonable as to warrant excusing the exhaustion requirement as to both claims. *Id*. at 8-12.

On June 26, 2020,[3] Petitioner filed a Response, ECF No. 8, to Respondents' Motion to Dismiss. On July 4, 2020, he filed an Addendum, ECF No. 9, to his Response. On July 8, 2020, Respondents filed a Reply, ECF No. 10, with Supplemental Authorities, ECF No. 10-1, to Petitioner's Response and Addendum.

---

[3] The docket sheet for ECF Nos. 8 and 9 indicate that they were filed on July 1, 2020, and July 8, 2020, respectively. However, because Petitioner is *pro se* and incarcerated, the prison mailbox rule applies. *See Houston v. Lack*, 487 U.S. 266, 270-71, 274 (1988) (holding that a prisoner appearing pro se satisfies the time limit for filing a notice of appeal if he delivers the notice to prison officials within the time specified; this "prison mailbox" rule is justified by the litigant's dependence on the prison mail system and lack of counsel to assure timely filing with the court). Absent evidence to the contrary, the Court assumes that Petitioner delivered his pleading to prison authorities on the date that he signed it. *See Hardy v. Conway*, 162 F. App'x 61, 62 (2d Cir. 2006) (unpublished opn.) ("[W]e have never required prisoners to provide affidavits of service to verify when they give their documents to prison officials. Indeed, in the absence of contrary evidence, district courts in this circuit have tended to assume that prisoners' papers were given to prison officials on the date of their signing.") (collecting cases).

**DISCUSSION**

**I.      Motions to Dismiss in the Section 2254 Context**

By their express terms, the Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Rules") apply to Section 2254 petitions. *See* Habeas Rule 1(a), 28 U.S.C. § 2254. Habeas Rules 4 and 5 require the respondent to file an answer and specified records from the underlying proceedings. *See id.*, Rules 4 & 5, 28 U.S.C. § 2254. However, Habeas Rule 12 does permit the discretionary use of the Federal Rules of Civil Procedure, when appropriate. *See id.*, Rule 12 (formerly Rule 11), 28 U.S.C. § 2254 ("The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."); *see also* Fed. R. Civ. P. 81(a)(4) ("These rules apply to proceedings for habeas corpus . . . to the extent that the practice in those proceedings: (A) is not specified in a federal statute, the Rules Governing Section 2254 Cases, or the Rules Governing Section 2255 Cases; and (B) has previously conformed to the practice in civil actions."). In this District, respondents may file a motion to dismiss pursuant in lieu of an answer, as Respondents did here.

In proceedings under Section 2254, courts generally have applied "the familiar standards in Rule 12(b)(6) of the Federal Rules of Civil Procedure . . . to the government's motion to dismiss." *Walker v. Kelly*, 589 F.3d 127, 138 (4th Cir. 2009) (citation omitted); *see also*, *e.g.*, *Williams v. Breslin*, 274 F. Supp. 2d 421, 425 (S.D.N.Y. 2003) (citations omitted). "[A] defendant may base such a motion on either or both of two grounds: (1) a challenge to the 'sufficiency of the pleading' under Federal Rule of Civil Procedure 8(a)(2); or (2) a challenge to the legal cognizability of the claim." *Shuler v. Brown*, No. 07-CV-0937, 2009 WL 790973, at *3 (N.D.N.Y. Mar. 23, 2009) (footnotes omitted; citing, *inter alia*, *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004)).

4

When ruling on a motion to dismiss, a court must accept all facts alleged in the complaint or petition as true, drawing all reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But a court need not accept unsupported legal allegations or legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted). Nonetheless, where a complaint fails to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," it should be dismissed. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In ruling on a motion to dismiss, a court "may consider all papers and exhibits appended to the complaint, as well as any matters of which judicial notice may be taken." *Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1092 (2d Cir. 1995) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts, again not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."); other citation omitted).

## II.    Cognizability of the Conditions of Confinement Claim

Respondents move to dismiss the Petition on the basis that the Eighth Amendment conditions of confinement claim is not cognizable in a Section 2254 proceeding and that the relief Petitioner seeks is only available under Section 1983. As Petitioner notes, this Court has considered and rejected the argument that relief under Section 1983 is available to a prisoner who, like Petitioner, is in state custody and seeks release from custody as his sole remedy for allegedly unconstitutional conditions of confinement. *E.g.*, *Holloway v. Wolcott*, No. 20-CV-6329-FPG,

2020 WL 3172772, at *3 (W.D.N.Y. June 15, 2020) ("[T] the relief Petitioner seeks is not available under 42 U.S.C. § 1983. However, the unavailability of such relief under Section 1983 does not foreclose the relief Petitioner seeks under Section 2254.")  (citing *Steward v. Wolcott*, No. 20-CV-6282-FPG, 2020 WL 2846949, at *4 & n. 5 (W.D.N.Y. June 2, 2020); *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus.")); *see also id.* at *2, *3 (citing *Thompson v. Choinski*, 525 F.3d 205, 209 (2d Cir. 2008)).

Notwithstanding these rulings, Respondents maintain that only Section 1983 complaints, not Section 2254 habeas petitions, are appropriate vehicles in which to request "relief turning on circumstances of confinement." ECF No. 6-3 at 3 (quotation omitted).  According to Respondents, "the Second Circuit recently recognized this difference between § 2254 and § 1983 claims in the context of COVID-19," ECF No. 6-3 at 4 (citing *Kielly v. Fitzpatrick*, No. 20-1496 (2d Cir. June 4, 2020), Order, Dkt. #20)).  Respondents suggest that the Second Circuit, in denying the petitioner's motion to file a second or successive Section 2254 petition, held that a conditions of confinement claim based on COVID-19 cannot be brought in a Section 2254 habeas petition and can only be brought in a Section 1983 complaint. *See id.* at 4 (citing *Kielly v. Fitzpatrick*, No. 20-1496 (2d Cir. June 4, 2020), Remand Order, 2d Cir. Dkt. #20 ("*Kielly* Order")). After reviewing Kielly's motion and the Second Circuit's order denying that motion, the Court is not persuaded that Respondents' characterization of either document is correct.

In *Kielly*, the petitioner had filed a *pro se* motion to file a second or successive Section 2254 habeas petition pursuant to 28 U.S.C. § 2244(b) attacking the validity of her plea agreement. Kielly asserted that her guilty plea was involuntary because, at the time, she did not know that she

would be subjected to "cruel and unusual punishment" and "deliberate indifference to serious medical and mental health needs" while serving her sentence in DOCCS custody, and that the State of New York breached the plea agreement by failing to protect her from those constitutional violations. *See Kielly v. Fitzpatrick*, No. 20-1496 (2d Cir. May 7, 2020), Motion Pursuant to 28 U.S.C. § 2244(b), 2d Cir. Dkt. #7.

The Second Circuit held that "[t]o the extent the petition alleges that the underlying guilty plea was involuntary because [Kielly]'s subsequent conditions of confinement were unforeseeable, it constitutes an impermissibly successive attack upon the validity of the original conviction." *Kielly* Order at 1 (citing 28 U.S.C. § 2244(b)(2)(B) (allowing a successive petition based on new evidence only if that evidence is sufficient to suggest that no reasonable factfinder would have found the petitioner guilty of the underlying offense)). Therefore, the Circuit denied authorization to file the Section 2244(b) motion as a second or successive Section 2254 petition. However, the Circuit stated, "to the extent the petition raises a claim concerning the lawfulness of [Kielly]'s current conditions of confinement, such as one properly brought pursuant to 42 U.S.C. § 1983," the case would be transferred to the district court for "whatever further action the district court finds appropriate." *Id.* (quotation and citation omitted).

At the outset, two differences between this case and the *Kielly* case are readily apparent. In contrast to *Kielly*, Petitioner seeks immediate release from confinement but does not seek vacatur of his conviction. Although the petitioner in *Kielly* ultimately wants to be released from DOCCS custody, she aims to do so by obtaining vacatur of her conviction. Moreover, this Court does not read the Second Circuit's order in *Kielly* as denying the petitioner authorization to file her motion as a Section 2254 habeas petition *because* it was based on unlawful conditions of confinement and therefore could not be brought in a Section 2254 action. Rather, the Circuit denied permission to

proceed under Section 2254 because the petitioner failed to meet the statutory prerequisite for filing a second or successive Section 2254 petition based on newly discovered evidence.

Furthermore, while the petitioner in *Kielly* did mention COVID-19, it was not as part of a claim for habeas relief. Instead, the reference occurred at the end of Kielly's Section 2244(b) motion, in a paragraph explaining that she petitioner had filed a motion to vacate the conviction under New York Criminal Procedure Law § 440.10, but it was "permanently on hold" due to state court closures during the COVID-19 pandemic. The petitioner asserted that because she is immunocompromised, she could not wait for the state court to rule on the motion to vacate, and accordingly her federal habeas petition should be heard on an expedited basis. Thus, it is not at all clear that the petitioner in *Kielly* was claiming she was being subjected to unconstitutional conditions of confinement stemming from COVID-19.

The summary remand order in *Kielly*, in this Court's view, does not hold or suggest that Section 2254 is an improper vehicle for litigating conditions of confinement claims brought by state prisoners who, as their only remedy, request immediate release from detention. Therefore, the Court finds no reason to depart from its previous decisions holding that relief under Section 1983 is unavailable to a state prisoner who, due to allegedly unconstitutional conditions of confinement, seeks release from custody as his or her sole remedy. *E.g.*, *Holloway*, 2020 WL 3172772, at *3. Accordingly, Respondents' Motion to Dismiss is DENIED to the extent it seeks dismissal of the Petition on the basis that Petitioner's Eighth Amendment attack on the execution of his sentence is not cognizable under Section 2254. *Id.*

### III.    Exhaustion of State Remedies

Respondents alternatively contend that Petitioner's conditions of confinement claim should be dismissed because it is unexhausted. Respondents note that although Petitioner filed a counseled

state habeas petition which recently was denied, he has not yet completed the exhaustion process for this claim. *See* ECF No. 6-3; ECF No. 10 at 2-3. Petitioner responds that the exhaustion requirement should be excused because of the exigencies created by the COVID-19 pandemic. ECF No. 8 at 8-9.

### A.  General Legal Principles

"Before a federal court may grant habeas relief to a prisoner in state custody, the prisoner must exhaust his or her state court remedies." *Galdamez v. Keane*, 394 F.3d 68, 72 (2d Cir. 2005) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b), (c)).  To provide the State with the necessary "opportunity to pass upon and correct" alleged constitutional violations, the prisoner must "fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation omitted; citing *O'Sullivan*, 526 U.S. at 845). "The requirement for exhaustion of discretionary direct review steps exists where state rules give a petitioner the 'right . . . to raise' the federal claims in that manner and the federal court cannot conclude that review of them is 'unavailable[,]'" *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001) (quoting *O'Sullivan*, 526 U.S. at 845-46; ellipsis in original), "even if, as is often the case, the state['s] [highest appellate] court rarely grants such petitions and usually confines itself to answering questions of broad significance." *Id.* (citing *O'Sullivan*, 526 U.S. at 845-46).

### B.  The Conditions of Confinement Claim Is Unexhausted

In New York, state prisoners may contest the constitutionality of their confinement by filing a habeas corpus petition pursuant to Article 70 of the New York Civil Practice Law and Rules. *See* N.Y. C.P.L.R. 7002(a) ("A person illegally imprisoned or otherwise restrained in his

liberty within the state . . . may petition without notice for a writ of habeas corpus to inquire into the cause of such detention and for deliverance."). "New York state habeas petitioners may appeal an adverse judgment as of right." *Pollack v. Patterson*, No. 10 CIV. 6297 JGK JLC, 2012 WL 2369493, at *2 (S.D.N.Y. June 22, 2012) (citing N.Y. C.P.L.R. 7011 ("An appeal may be taken from a judgment refusing to grant a writ of habeas corpus or refusing an order to show cause issued under subdivision (a) of [N.Y. C.P.L.R.] section 7003, or from a judgment made upon the return of such a writ or order to show cause.")); *see also*, *e.g.*, *Vargason v. Brunetti*, 241 A.D.2d 941, 941, 661 N.Y.S.2d 345, 346 (4th Dep't 1997) ("[A] direct appeal from the judgment granting the writ of habeas corpus is available[.]") (citations omitted). Petitioners then may seek leave to appeal from the New York Court of Appeals. *See*, *e.g.*, *People ex rel. McManus v. Horn*, 18 N.Y.3d 660, 663, 967 N.E.2d 671, 672 (2012) (granting leave to appeal denial of N.Y. C.P.L.R. Article 70 habeas petition); N.Y. C.P.L.R. 5602 (discussing appeals by permission to New York Court of Appeals); N.Y. C.P.L.R. 5513 (discussing, *inter alia*, time to move for permission to appeal).

Through counsel, Petitioner filed a state habeas corpus petition on May 13, 2020, in New York State Supreme Court, Erie County (Index No. 804489-2020) asserting his conditions of confinement claim based on the COVID-19 pandemic. ECF No. 1 at 9. Relief was denied on June 29, 2020. ECF No. 9 at 1. Petitioner states that he filed a notice of appeal on July 4, 2020, with the Appellate Division, Fourth Department, New York State Supreme Court. *Id.* Since Petitioner has not litigated his conditions of confinement claim through one complete round of New York's established review process for N.Y. C.P.L.R. Article 70 habeas petitions, the claim is unexhausted.

In the Section 2254 context, the failure to exhaust may be excused only in the rare case where "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B).

Petitioner asserts in his Petition that "[n]o administrative remedies are available that can provide timely relief" and requests that the Court take expedited action because his Section 2254 application is a "life and death emergency." ECF No. 1 at 9.

Respondents argue that neither exception applies here because New York state courts have remained open to process essential judicial proceedings, including "emergency applications related to the coronavirus." ECF No. 6-3 at 7 (quoting Administrative Order AO/7820, dated March 22, 2020, attached as Exhibit A, ECF No. 6-2, to Declaration of Margaret A. Cieprisz, Esq., ECF No. 6-1); *see also* ECF No. 6-3 at 7-8 (citing, *inter alia*, *Bergamaschi v. Cuomo*, No. 20 CIV. 2817 (CM), 2020 WL 1910754, at *4 (S.D.N.Y. Apr. 20, 2020) ("[A]ny prisoner at any time is free to bring a petition for a writ of habeas corpus in the New York State Supreme Court, pursuant to Article 70 of New York's Civil Practice Law and Rules, on the ground that the conditions of his/her confinement are unlawful. The record reflects that numerous such petitions have been brought, and many granted by justices of the New York State Supreme Court.") (citation to record omitted)); *see also* ECF No. 10 at 1-2 (collecting cases).

It is true that "a federal court may theoretically find that there is an 'absence of available State corrective process' under § 2254(b)(1)(B)(i) if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001). However, the New York state courts are not denying petitioners' COVID-19 conditions of confinement claim as procedurally barred; rather, they are considering them on the merits. *See People ex rel. Carroll v. Keyser,* No. 531323, __ N.Y.S.3d __, 2020 WL 2950820, at *2-3 (3d Dep't June 4, 2020) (denying, on the merits, prisoner's habeas claim that his incarceration and sentence violated the Eighth Amendment violation where prisoner failed to demonstrate subjective element of deliberate indifference claim

or that sentence had become grossly excessive due to risks created by COVID-19 pandemic); *People ex rel. Ferro v. Brann,* 183 A.D.3d 758, 121 N.Y.S.3d 658, 659 (2d Dep't 2020) (denying habeas petition because petitioner, who contracted COVID-19 while incarcerated, failed to demonstrate that prison officials had been deliberately indifferent to his medical needs or that he was entitled to immediate release from custody as a remedy for any failure to address his medical needs) (citations omitted). Furthermore, futility is not demonstrated by the unlikelihood of success on the merits in state court. *See Jones v. Keane*, 329 F.3d 290, 295 (2d Cir. 2003) ("[T]he fact that the [state court] may have been unlikely to grant habeas relief on his [constitutional claim] does not cure his failure to have raised it in state courts."). Since the New York state courts are timely hearing and deciding claims the same as or similar to the one Petitioner asserts in his federal habeas application, the Court cannot find that there is an "absence of corrective process," 28 U.S.C. § 2254(b)(1)(B)(i).

Petitioner urges that his "risk of death caused by COVID-19 pandemic, increased due to severe and underlying health conditions render state corrective process essentially ineffective." ECF No. 8 at 8. In other words, Petitioner contends that he meets the exception in 28 U.S.C. § 2254(b)(1)(B)(ii) because "circumstances exist that render such process ineffective to protect the rights of the applicant." Respondents counter that Petitioner's assertions about the conditions at Gowanda C.F. are contradicted by the testing data published by DOCCS. *See* ECF No. 10 at 2 (citing DOCCS COVID-19 Report, https://doccs.ny.gov/system/files/documents/2020/07/doccs-covid-19-confirmed-by-facility-7.8.2020_0.pdf). Respondents note that, contrary to Petitioner's assertion, officials at Gowanda C.F. *are* conducting COVID-19 testing, as evidenced by DOCCS' latest COVID-19 report indicating that 39 prisoners have tested negative and 26 tests are pending. *Id.* (citing DOCCS COVID-19 Report). The most recent report available on DOCCS' website, as

of July 10, 2020, is the July 9, 2020 report. As of 3:00 p.m. on that date, there have been 30 additional tests performed for a total of 56, and 64 inmates have tested negative. There has only been one positive test result to date, and it appears that individual has recovered. Finally, there have been zero deaths from COVID-19 at Gowanda C.F. as of July 9, 2020. *See* https://doccs.ny.gov/system/files/documents/2020/07/doccs-covid-19-confirmed-by-facility-7.10. 2020-1.pdf (last accessed July 10, 2020). Accordingly, the factual basis for Petitioner's argument that he meets the exception in Section 2254(b)(1)(B)(ii) is unfounded and contradicted by published testing data.

Petitioner cites an out-of-Circuit district court decision, *Cameron v. Bouchard*, No. CV 20-10949, 2020 WL 2569868 (E.D. Mich. May 21, 2020), *reconsideration granted*, No. CV 20-10949, 2020 WL 2615740 (E.D. Mich. May 22, 2020), *vacated*, No. 20-1469, 2020 WL 3867393 (6th Cir. July 9, 2020), for the proposition that the COVID-19 pandemic excuses his failure to exhaust his state remedies. ECF No. 8 at 9. The Court finds that *Cameron* is distinguishable on two significant grounds.

First, the district court in *Cameron* held that the general habeas statute, 28 U.S.C. § 2241 ("Section 2241"), as opposed Section 1983, was a possible avenue for relief for a mixed group of pretrial detainees and convicted prisoners in Michigan seeking release on the basis that their conditions of confinement had become unconstitutional due to the COVID-19 pandemic. *Cameron*, 2020 WL 2569868, at *2–3, *13–14. This Court, however, has concluded that a state prisoner's conditions of confinement claim must be brought under Section 2254, not Section 2241. *Steward v. Wolcott*, No. 20-CV-6282-FPG, 2020 WL 2846949, at *4 (W.D.N.Y. June 2, 2020) (collecting cases). This ruling has important ramifications: Section 2254 contains a statutory exhaustion requirement subject to two "narrow exceptions," *Elleby v. Smith*, No. 20 CIV. 2935

(PAE), 2020 WL 2611921, at *4 (S.D.N.Y. May 22, 2020), whereas "Section 2241's exhaustion requirement is a judicial invention . . . 'amenable to judge-made exceptions.'" *McPherson v. Lamont*, No. 20-CV-534, 2020 WL 2198279, at *6 (D. Conn. May 6, 2020) (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016)). Because this Court has held that conditions of confinement claims such as the one asserted by Petitioner here must be raised in a Section 2254 proceeding, and because Section 2254 "explicitly mandates exhaustion as a prerequisite to judicial review," *Bastek v. Fed. Crop Ins. Corp.*, 145 F.3d 90, 94 (2d Cir. 1998), the Court must enforce that requirement. *Id.* (citation omitted). The district court in *Cameron*, having allowed the petitioners to proceed under Section 2241, was not similarly constrained.

Second, the district court in *Cameron* found that there were, in fact, no "available" state remedies to the inmates and detainees. *Cameron*, 2020 WL 2569868, at *14. While the Michigan prison officials identified four instances where state court judges released inmates due to COVID-19 concerns, the state court in two cases did not identify the court rule or state statute on which it was relying to grant relief; in the remaining two cases, the court cited a statutory provision which did "not set forth a remedy for *inmates* to pursue" but instead "grant[ed] judicial officers the authority to suspend or reduce a jail sentence or modify bond in response to "a county jail overcrowding state of emergency." *Id.* (quotation omitted; emphasis in original). Thus, to the extent prisoners were able to obtain relief through that mechanism, it was "not part of [Michigan's] 'standard review process' and [was] not a remedy through which state courts have 'provided relief . . . in the past.'" *Id.* (quoting *O'Sullivan*, 526 U.S. at 844).

Here, in contrast to the situation in Michigan, there is at least one statutory mechanism available to New York state inmates and detainees to assert their conditions of confinement claims, namely, Article 70 of the N.Y. C.P.L.R.  And, the New York state courts, which have remained

open during the pandemic to process essential proceedings, have been considering and resolving emergency COVID-19 applications for release brought by state inmates and detainees under N.Y. C.P.L.R. Article 70. *E.g.*, *Cobb v. Wolcott*, No. 20-CV-496 (JLS), 2020 WL 3470166, at *3 (W.D.N.Y. June 25, 2020) (citing *People ex rel. Squirrell v. Langley*, No. 500451/2020, 2020 WL 2736623 (N.Y. Sup. Ct. Putnam Cty. May 25, 2020)  (dismissing habeas corpus petitions by inmates seeking release during the COVID-19 pandemic where the court, after examining the measures taken by the sheriff and other officials, concluded there was no violation of petitioners' due process or Eighth Amendment rights); *People ex rel. Gregor v. Reynolds*, No. CV20-0150, 2020 WL 1910116 (N.Y. Sup. Ct. Essex Cty. Apr. 17, 2020) (where two inmates filed N.Y. C.P.L.R. Article 70 petitions for release, the sheriff's failure to take adequate protective measures violated the due process rights of one inmate who was vulnerable to COVID-19); *People ex rel. Stoughton v. Brann*, 122 N.Y.S. 3d 866, 872-73 (Sup. Ct. N.Y. Cty. Apr. 6, 2020) (ordering the release of eighteen "at-risk" prisoners in a due process challenge by thirty-two petitioners detained at the Rikers Island prison)). In fact, Petitioner already has received a decision—albeit an unfavorable one—from the Erie County Supreme Court on his COVID-19 state habeas petition. *Cameron* thus reflects a very different set of factual circumstances than those presented to New York state inmates generally and Petitioner in particular. The Court therefore does not find it persuasive.

As a final point in the exhaustion discussion, Respondents have interpreted Petitioner's pleadings to assert that exhaustion should be excused due to unreasonable delay in the completion of his direct appeal. In the Second Circuit, "a failure to exhaust may be excused . . . where there has been 'substantial delay in the state criminal appeal process.'" *Roberites v. Colly*, 546 F. App'x 17, 19 (2d Cir. 2013) (summary order) (quoting *Cody v. Henderson*, 936 F.2d 715, 718 (2d Cir.

1991) (nine-and-a-half years constituted "substantial delay" that excused failure to exhaust claims)); *see also Muwwakkil v. Hoke*, 968 F.2d 284 (2d Cir. 1992) (stating that petitioner's 13–year processing delay "clearly denied [the petitioner] his right to a speedy appeal" and finding that where the petitioner regularly wrote to counsel and then to legal aid groups throughout the period of delay, petitioner had shown diligent efforts to pursue the appeal); *Simmons v. Reynolds*, 898 F.2d 865, 867 (2d Cir. 1990) (exhaustion argument properly rejected where petitioner had "made frequent but unavailing requests to have his appeal processed" during its six-year pendency).

It is unclear to the Court that Petitioner actually is asserting appellate delay as a basis to excuse exhaustion. In any event, assuming that he is doing so, the Court does not believe that the delay in the completion of Petitioner's direct appeal is relevant to the exhaustion inquiry regarding the conditions of confinement claim. The conditions of confinement claim must be, and is currently being, raised in a collateral procedural vehicle—not on direct appeal. Any delay in the direct appeal of Petitioner's underlying conviction has no bearing on the progress of his currently pending state habeas proceeding in which he is litigating the conditions of confinement claim.

In sum, the Court finds that the conditions of confinement claim is unexhausted because Petitioner has not "invoke[ed] one complete round of the State's established appellate review process[,]" *O'Sullivan*, 526 U.S. at 845, for N.Y. C.P.L.R. Article 70 petitions. Further, the Court finds no basis for excusing the exhaustion requirement as to this claim.

### C.  Exhaustion Is Not Required as to the Appellate Delay Claim

Respondents argue that Petitioner's appellate delay claim is unexhausted because he has not presented it to the New York state courts as an independent claim.

As an initial matter, it appears to be an unsettled question in this Circuit whether a due process claim based on the denial of the right to a speedy appeal is cognizable in a federal habeas

proceeding following the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, which significantly restricted the scope of habeas corpus review. Now, the writ may not be "granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. 2254(d)(1). The Supreme Court has stated that "'[c]learly established Federal law' . . . includes only 'the holdings, as opposed to the *dicta*, of this Court's decisions.'" *Howes v. Fields*, 565 U.S. 499 (2012) (citation omitted). If the Supreme Court "has not broken sufficient legal ground to establish an asked-for constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar." *Williams v. Taylor*, 529 U.S. 362, 381 (2000).

While the "Second Circuit has held that criminal defendants have a right to a timely appeal, . . . '[t]he Supreme Court has not yet directly addressed the issue of whether the Constitution guarantees a speedy criminal appeal.'" *Brightley v. Heath*, No. 11CV1761 (LGS) (DF), 2015 WL 10487766, at *29 (S.D.N.Y. Jan. 6, 2015), *report and recommendation adopted*, No. 11 CIV. 1761 (LGS), 2016 WL 1060326 (S.D.N.Y. Mar. 15, 2016) (quoting *Cody*, 936 F.2d at 718). In *Brightley*, the district court held that the petitioner's due process claim based on appellate delay—which is grounded in Second Circuit law—could not afford him a basis for habeas relief under AEDPA. *Id.* (citing *Reed v. Quarterman*, 504 F.3d 465, 486-87 (5th Cir. 2007) (finding that circuit decisions could not form the basis for habeas relief on a due process claim for excessive appellate delay, where there was no Supreme Court decision holding such delay to be a constitutional violation); *King v. DeMorales*, No. 08cv4984 (TJH)(JEM), 2010 WL 4916624, at

*14-15 (C.D. Cal. May 3, 2010) (holding that, in the absence of Supreme Court authority, the state court's denial of an appellate delay claim "could not have constituted an unreasonable application of clearly established Supreme Court law" under AEDPA), *report and recommendation adopted*, 2010 WL 4916623 (C.D. Cal. Dec. 1, 2010)); *see also Plymail v. Mirandy*, No. CV 3:14-06201, 2018 WL 8620564, at *18 (S.D.W. Va. July 20, 2018) (same), *report and recommendation adopted*, No. CV 3:14-6201, 2019 WL 1258847 (S.D. W. Va. Mar. 19, 2019).

However, in *Roberites*, an unpublished 2013 decision, the Second Circuit allowed a Section 2254 petitioner—whose petition was subject to AEDPA—to press a due process claim based on appellate delay. 546 F. App'x at 20. Although the parties' briefs reveal a dispute over whether such a claim was still viable notwithstanding Section 2254(d)(1)'s limitations on habeas relief, the Second Circuit did not address that issue in its decision. Instead, the Circuit conditionally granted the writ, ordering the petitioner to be released unless his appeal was decided by a certain date. *Roberites*, 546 F. App'x at 21.

Here, Respondents have not argued that because there is no clearly established Supreme Court precedent holding that there is a due process right to a speedy appeal, Petitioner's appellate delay claim cannot provide a basis for habeas relief under AEDPA. Instead, they simply contend that the claim is unexhausted and is, in any event, without merit. They are incorrect on the exhaustion argument, for the Second Circuit does not require exhaustion of this type of claim. *Roberites*, 546 F. App'x at 20 (noting that it has "rejected arguments that such due process claims must first be pursued in state court, deeming writs of error *coram nobis* inadequate to afford relief." *Roberites*, 546 F. App'x at 20 (citing *Brooks v. Jones*, 875 F.2d 30, 31 (2d Cir. 1989); *Mathis v. Hood*, 851 F.2d 612, 614-15 (2d Cir. 1988)). In *Roberites,* the Circuit declined to reconsider its precedent not requiring exhaustion of such due process claims. *Id.* (citing *Mathis*, 851 F.2d at 615).

Accordingly, to the extent that it remains cognizable—and *Roberites* suggests that it may be—Petitioner's appellate delay claim is not subject to Section 2254(b)(1)(B)'s exhaustion requirement. In other words, Petitioner does not need to give New York state courts "the initial 'opportunity to pass upon and correct,'" *Picard v. Connor*, 404 U.S. 270, 275 (1971) (quotation omitted), the appellate delay claim before asserting it in federal court.

### D.  The Petition Is a "Mixed Petition"

Because the Petition contains both exhausted and unexhausted claims, it is considered a "mixed petition." When confronted with a mixed petition, a federal court has four procedural options: (1) dismiss the petition in its entirety without prejudice; (2) deny the *entire* petition on the merits under 28 U.S.C. § 2254(b)(2); (3) allow the petitioner to delete the unexhausted claims and proceed with his exhausted claims; or (4) in limited circumstances, stay the petition to allow petitioner to exhaust his unexhausted claims. *E.g.*, *Wesley-Rosa v. Kaplan*, 274 F. Supp. 3d 126, 128 (E.D.N.Y. 2017) (citing *Francois v. Warden of Sullivan Corr. Facility*, No. 12-CV-5333 RRM, 2014 WL 1153920, at *4 (E.D.N.Y. Mar. 19, 2014)); *see generally Rhines v. Weber*, 544 U.S. 269, 277 (2005) ("[S]tay and abeyance should be available only in limited circumstances.").

Although recognizing that his Petition contains unexhausted claims, Petitioner has not requested a stay and continues to insist he is entitled to proceed directly to federal court without first exhausting his claims in state court.  Under these circumstances, the Court would be hard-pressed to find "good cause" for his failure to exhaust, the absence of which would be "fatal to Petitioner's ability to fulfill the *Rhines* standard." *Carr v. Graham*, 27 F. Supp. 3d 363, 365 (W.D.N.Y. 2014) (citing *Rhines*, 544 U.S. at 277 ("Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to

exhaust his claims first in state court."); *Mills v. Girdich*, 614 F. Supp. 2d 365, 379-80 (W.D.N.Y. 2009)).

The Court need not determine whether Petitioner can fulfill the stringent *Rhines* criteria because a stay does not appear necessary to preserve his "right to obtain federal relief[,]" *Rhines*, 544 U.S. at 278 (citation omitted). As discussed below, Petitioner has already commenced state exhaustion proceedings, thereby tolling the statute of limitations. *See, e.g.*, *Francois*, 2014 WL 1153920, at *4 (finding no "obvious need for a stay, given that petitioner has a *coram nobis* application currently pending" which "would toll [the] statute of limitations for his application for habeas relief"); *see also Davis v. Graham*, No. 16-CV-275-FPG, 2018 WL 3996424, at *2 (W.D.N.Y. Aug. 21, 2018) (similar). Accordingly, dismissal of the Petition without prejudice will not "'jeopardize the timeliness of a [future] collateral attack.'" *Zarvela*, 254 F.3d at 380.

Under AEDPA, a one-year period of limitation applies to habeas petitions filed by state prisoners. 28 U.S.C. § 2254(d)(1). The limitations period runs from the "latest," *id.*, of the following four events:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

"For most petitioners, 28 U.S.C. § 2244(d)(1)(A) provides the start-date for the statute of limitations, and their convictions become 'final' upon completion of their direct appeals to the

state's highest court and the United States Supreme Court." *Gayden v. Chappius*, No. 6:12-CV-6196 MAT, 2013 WL 4807296, at *4 (W.D.N.Y. Sept. 9, 2013) (quoting *Williams v. Artuz*, 237 F.3d 147, 150 (2d Cir. 2001)). "Once the New York Court of Appeals denies leave to appeal, a petitioner has ninety (90) days in which to file a petition for a writ of *certiorari* with the United States Supreme Court seeking review of the state court's decision. Thus, a New York defendant's conviction becomes final ninety (90) days after the New York Court of Appeals denies leave to appeal." *Id.* (citing *Ross v. Artuz*, 150 F.3d 97, 98 (2d Cir. 1998)).  Under Section 2244(d)(1)(A), the statute of limitations has not started running because Petitioner's judgment of conviction has not become final; his direct appeal is still pending. *See Gayden*, 2013 WL 4807296, at *2 (noting that one-year statute of limitations had not commenced running where Court of Appeals has not yet ruled on the petitioner's leave application).

In the alternative, assuming that Section 2244(d)(1)(D) applies and that the COVID-19 pandemic constitutes the "factual predicate" for Petitioner's Eighth Amendment conditions of confinement claim, Section 2244(d)(1) provides that the statute of limitations does not begin to run until the *latest* of the four events referenced in subsections (A) through (D). In the present case, that will be the conclusion of Petitioner's direct appeal. Furthermore, although the filing of a federal habeas petition does not toll AEDPA's limitations period, *Duncan v. Walker,* 533 U.S. 167, 172 (2001), the pendency of Petitioner's timely Article 70 state habeas petition would provide a period of statutory tolling. *See* 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."); *see also Morales v. Sabourin*, No. 00 CIV. 8773(LTS)(GW), 2002 WL 32375006, at *2 (S.D.N.Y. Apr. 30, 2002) (finding that federal habeas petitioner's prior state habeas petition

was a "properly filed" application for post-conviction relief for purposes of tolling statute of limitations for filing of federal petition, even though claims raised in state petition were procedurally barred under New York law; procedural bar at issue set forth conditions to obtaining relief, not conditions to filing) (citing *Bennett v. Artuz*, 199 F.3d 116, 122-23 (2d Cir. 1999)).

Regardless of which start-date is used in Petitioner's case, the Court finds that dismissal of the Petition without prejudice pending completion of exhaustion proceedings will not endanger the timeliness of any re-filed petition. The Court notes that district courts in this Circuit have elected to dismiss mixed petitions without prejudice rather than grant a stay where much less time remains on the statute of limitations. *See King v. Greiner*, No. 02CIV5810DLCAJP, 2002 WL 31453976, at *2 (S.D.N.Y. Nov. 5, 2002), *report and recommendation adopted*, No. 02 CIV. 5810(DLC), 2003 WL 57307 (S.D.N.Y. Jan. 7, 2003) (dismissing mixed petition without prejudice where the petitioner's "remaining time to bring a federal habeas petition would be 112 days— considerably longer than 'those with fewer than 60 days remaining on the limitations period'") (quoting *Zarvela*, 254 F.3d at 381); collecting cases). Although Petitioner has some leeway on timeliness, given that the limitations period either has not started to run or has only recently started running, he is advised to return to federal court as soon as possible after he completes the exhaustion process with regard to his conditions of confinement claim.

## CONCLUSION

For the foregoing reasons, the Court finds that the Petition is a "mixed petition" containing both exhausted and unexhausted claims. The Court further finds that dismissal of the Petition without prejudice, with leave to refile upon completion of exhaustion proceedings, is the appropriate course because dismissal will not jeopardize the timeliness of a subsequent Section 2254 petition. Therefore, the Court GRANTS Respondents' Motion to Dismiss, ECF No. 6, in part

and DENIES it in part. The Motion to Dismiss is GRANTED to the extent it seeks dismissal of the Petition based on the failure to exhaust state remedies as to the conditions of confinement claim, and it is DENIED in all other respects. The Petition accordingly is DISMISSED WITHOUT PREJUDICE, with leave to refile once Petitioner has completed exhaustion proceedings as to the conditions of confinement claim. Petitioner is again reminded that the Petition is subject to AEDPA's strict one-year statute of limitations and that he should return to federal court as soon as possible once exhaustion proceedings are complete.

IT IS SO ORDERED.

Dated: July 15, 2020
      Rochester, New York.

                            _____
                            HON. FRANK P. GERACI, JR.
                                Chief Judge
                      United States District Court